## THURMAN et al. v. SCHLOTZHAUER et al.

No. 25017.   March 27, 1934.

Pierce, Follens & Rucker, for petitioners.

J. Berry King, Atty. Gen., and Robert D. Crowe, Asst. Atty. Gen., for respondent.

BUSBY, J. This is an original action instituted in this court in which the petitioners, John M. Thurman and the Maryland Casualty Company, seek to vacate an order of the State Industrial Commission entered on the 19th day of August, 1933, awarding compensation under the Workmen's Compensation Act to respondent W. C. Schlotzhauer.

Hereafter the petitioners, John M. Thurman and Maryland Casualty Company, will be respectively designated as employer and insurance carrier, and the respondent W. C. Schlotzhauer as claimant.

Petitioner John M. Thurman was the owner of a planing mill in the city of Pawhuska. The claimant was by trade a carpenter and contractor. It appears from the record that the claimant sustained an accidental personal injury to his left hand while engaged in operating a rip saw at the place of business of the petitioner John M. Thurman on the 10th day of January, 1933. As a result of such injury the claimant suffered a temporary total disability for a period of 7 weeks and a 20 per cent. permanent partial disability to his left hand. The disputed question in this case in the proceeding before the Commission was whether the claimant at the time of the injury was employed by the petitioner John M. Thurman. On this disputed question the State Industrial Commission found that the claimant was so employed and awarded him compensation for the disability resulting from the injury.

Petitioner contends herein that there is no evidence in the record supporting the finding of the Commission on this question. The relation of master and servant, or employer and employee, must be shown to exist at the time of the injury before claimant can recover. Trustees of Masonic Lodge of Elk City et al. v. Smith, 161 Okla. 200, 17 P. (2d) 430. Maryland Casualty Co. v. Rose, 163 Okla. 76, 20 P. (2d) 1046. The relationship of employer and employee is contractual in its nature and depends upon the existence of an agreement express or implied between the parties. Magnolia Petroleum Co. v. McNeill, 163 Okla. 104, 21 P. (2d) 45; Southwestern Bridge & Culvert Co. v. Sullenger et al., 163 Okla. 68, 20 P. (2d) 891; Barnsdall Refining Co. v. State Industrial Commission et al., 163 Okla. 154, 21 P. (2d) 749.

Shortly prior to the time of the injury claimant had made a contract with a man by the name of Clarence Gray, and in order to fulfill this contract he ordered about $200 worth of material from the petitioner John M. Thurman. On the 10th day of January, 1933, he went to the place of business of the petitioner to get a portion of the material ordered. The material which the petitioner Thurman had in stock at that time was not in form required by the order, and in order for it to be in that form it required some "trimming." It was the duty of the planing mill owner and operator to trim the material to the proper form. The petitioner had a man working for him whose duty it was to do this work. At this particular time this employee was off duty, being sick. The claimant undertook to perform the labor of the man who was sick, and while doing so received the injury complained of in this action. According to the testimony of the claimant, he had a specific understanding with the petitioner that he was to perform this labor

while the regular employee was sick. In answer to a question propounded during the examination as a witness, he stated:

"A. Well, I want to say I talked to Mr. Thurman before that about getting out some trim there, and his man had the 'flu' and was out of town and not able to work and we talked it over together before that, and I could go ahead and take care of that when he was not able to work, and I went ahead to take care of this trim to get out on the job."

According to the testimony of Mr. Thurman, the alleged employer, such an understanding existed between himself and the claimant. He testified in part as follows:

"Q. Was he in your employ on January 10, 1933, this year? A. Well, he was in my employ in this way; just like he explained, my regular mill man was off the entire week, and when he came in after this stuff he went to work and got it out. He had worked several days down here on the post office confectionary and he worked for me on several other construction jobs. And he had been a fill-in man and he did go and get that stuff out on account of the other man not being there. I drove up just as the accident happened and he was getting in the car."

It further appears from the testimony in this case that the claimant was paid by Mr. Thurman for the work that he performed on this occasion. The payment was made by deducting the value of the services rendered from the amount of the bill for material sold to the claimant. It appears to us that the testimony above quoted, as well as the entire record, amply supports the view that there existed between the petitioner John M. Thurman and the claimant an agreement whereby the claimant was to perform services as an employee of the petitioner and to receive compensation therefor, and that at the time of the injury the claimant was engaged in performing such services. We, therefore, hold that the finding of the Commission made upon the disputed question of fact is supported by competent evidence, and the award of the Commission is affirmed.

RILEY, C. J., CULLISON, V. C. J., and ANDREWS and OSBORN, JJ., concur.